IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Best Western International, Inc., | No. CV-15-01406-PHX-BSB |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | |
| KKR, LLC, a Kansas limited liability company; and Ashish Gupta, a Kansas Resident, | |
| Defendants. | |

Plaintiff Best Western International, Inc. (Best Western) has filed a motion for default judgment in this case alleging breach of contract claims and state and federal trademark infringement claims against Defendants KKR, LLC (KKR) and Ashish Gupta.[1] (Doc. 1.) The Complaint alleges that Defendants breached a contract with Best Western and refused to cease and desist their unauthorized use of Best Western's trade name, trademarks, service marks, logos, and similar identifying symbols (the Best Western Symbols) after the license to use the Best Western Symbols terminated. (Doc. 1 at 2.) The Court has subject matter jurisdiction over Best Western's claims pursuant to 28 U.S.C. § 1331 and § 1367.

---

[1] Best Western filed a Complaint on July 23, 2015. (Doc. 1.) Best Western consented to magistrate judge jurisdiction pursuant to 28 U.S.C. 636(c). (Doc. 8.) However, because Defendants have not appeared or consented to magistrate judge jurisdiction, the Court proceeds by a Report and Recommendation to the Honorable Stephen M. McNamee. *See* General Order 11-03.

Best Western properly served Defendants. (Docs. 9, 10, 11.) Based on Defendants' failure to appear or otherwise respond to the Complaint, the Clerk of Court entered default against Defendants. (Doc. 13.) Best Western now moves for default judgment. For the reasons set forth below, recommends that default judgment be entered in favor of the Best Western and against Defendants.

## I. Best Western's Allegations and Request for Damages

This case involves a contract dispute between Best Western and Defendants. Best Western also alleges that Defendants infringed on Best Western's registered trademarks in violation of the Lanham Act and state law.

On January 15, 2008, Defendant KKR applied for a Best Western membership and Defendants KKR and Gupta executed a Membership Application and Agreement (the Membership Agreement) for the hotel property known as the Red Coach Inn located in Newton, Kansas (the Hotel). (Doc. 1 at ¶¶ 3, 4, 22; Doc. 16, Ex. 1 at ¶ 3.[2]) Defendant Gupta signed the Membership Agreement as the voting member for the Hotel and, thus became jointly and severally liable for the responsibilities of the Best Western membership. (Doc. 1 at ¶¶ 4, 23; Doc. 1-1 at 11-12;[3] Doc. 16, Ex. 1 at ¶ 4.) Defendants agreed to and became bound by the terms of the Membership Agreement and the Regulatory Documents. (Doc. 16, Ex. 1 at ¶ 5.) Pursuant to the terms of the Membership Agreement, Defendants agreed to timely pay all fees, dues, charges, and assessments imposed generally on the membership by the Board of Best Western and to promptly pay the costs of all goods or services provided by or ordered through Best Western. (Doc. 1 at ¶¶ 12, 25; Doc. 16, Ex. 1 at ¶ 6.) Defendants further agreed that past due amounts would bear interest at the rate of one and one-half percent (1.5%) per month from the date due until paid. (Doc. 1 at ¶ 25; Doc. 16, Ex. 1 at ¶ 7.) Pursuant to the Membership

---

[2] Exhibit 1 to docket 16 is the Affidavit of Cheryl Pollack in Support of Plaintiff's Motion for Default Judgment. (Doc. 16, Ex. 1.)

[3] Exhibit 1 to the Complaint includes several documents. For ease of reference, the Court uses the CM/ECF document number and pagination to refer to that exhibit.

- 2 -

Agreement, Best Western granted Defendants a non-exclusive license to use Best Western's trademarks and other intellectual property (the Best Western License), which allowed Defendants to use the Best Western Symbols in connection with the Hotel. (Doc 1 at ¶ 11; Doc. 16, Ex. 1 at ¶ 8.)  Best Western holds multiple service mark registrations with the United States Patent and Trademark Office (USPTO) for the Best Western marks. (Doc 1 at ¶¶ 13-16; Doc. 16, Ex. 1 at ¶ 9.)

The Membership Agreement limited Defendants' use of the Best Western License. (Doc. 1 at ¶¶ 11-12, 18-20; Doc. 16, Ex. 1 at ¶ 10.)  For example, Defendants agreed that termination of the Best Western Membership would result in termination of the Best Western License. (Doc. 1 at ¶ 20; Doc. 1-1, p. 7 at ¶ 22; Doc. 16, Ex. 1 at ¶ 11.) Defendants agreed to remove from public view and stop using all Best Western Symbols and all other references to Best Western within fifteen days of the date of termination of the Best Western License. (Doc. 1 at ¶ 21; Doc. 1-1, p. 7 at ¶ 22; Doc. 16, Ex. 1 at ¶ 12.) Defendants also agreed that, upon termination of the Best Western License, they would take steps necessary to cause the cessation of all advertising and distribution of promotional material containing any Best Western Symbol. (Doc. 1 at ¶ 21; Doc. 1-1, p. 7 at ¶ 22; Doc. 16, Ex. 1 at ¶ 13.)

On September 18, 2014, Best Western notified Defendants that the Board was considering terminating the Hotel's membership because the Hotel received two substandard quality assessment scores within an eighteen month period and the Hotel had failed to return an acknowledgement regarding the failed American Automobile Association inspection. (Doc. 1 at ¶ 31.)  Best Western advised Defendants they could request a hearing. (*Id.*)  After a hearing, at which information that Defendants provided was considered, Defendants' membership was terminated effective November 6, 2014. (Doc. 1 at ¶¶ 31-32; Doc. 16, Ex. 1 at ¶ 14.)  In accordance with the Membership Agreement and Regulatory Documents, Best Western notified Defendants in writing that they were required to discontinue use of the Best Western Symbols on or before November 21, 2014. (Doc. 1 at ¶ 33; Doc. 1-1 at 31-36; Doc. 16, Ex. 1 at ¶ 15.)

On January 5, 2015, Best Western discovered that the Hotel was still displaying Best Western's Symbols on at least two exterior signs at the Hotel, that Best Western's "curvilinear sign cabinet" on the Hotel's main property had not been removed, altered or destroyed as required by the Regulatory Documents on its main property sign, and that three Department of Transportation signs still advertised Defendants' Hotel as a Best Western member. (Doc. 1 at ¶ 34; Doc. 1-1 at ¶¶ 29-31, 42; Doc. 16, Ex. 1 at ¶ 16.) On February 9, 2015, Best Western notified Defendants that they had to satisfy the open and stated account with Best Western, at which point Defendants owed $20,362.26. (Doc. 1 at ¶ 35; Doc. 16, Ex. 1 at ¶ 17.) On December 30, 2015, a Best Western representative observed that the Hotel was still displaying Best Western's Symbols on at least one exterior sign at the Hotel and that Best Western Symbols had not been removed from the highway signs. (Doc. 16, Ex. 1 at ¶ 18.)

Paragraph 24 of the Membership Agreement provides that if a former member violates the nonexclusive License and continues to use Best Western Symbols beyond the fifteen-day grace period, then the offending party shall be assessed liquidated damages equal to fifteen percent (15%) of the mean of the property's room rates per day, multiplied by the total number of rooms at the property for every day that a former member continues to use the Best Western Symbols beyond the fifteen-day period. (Doc. 1 at ¶ 76; Doc. 1-1, p. 7 at ¶ 24; Doc. 16, Ex. 1 at ¶ 19.) Best Western seeks liquidated damages payable pursuant to the terms of the Membership Agreement. (Doc. 16 at 6; Doc. 1 at ¶¶ 76-77; Doc. 1-1, p. 7 at ¶ 24.) Best Western seeks liquidated damages from November 22, 2014 through and including December 30, 2015. (Doc. 1 at ¶ 33; Doc. 1-1, at 7; Doc. 16, Ex. 1 at ¶ 20.)

Additionally, Best Western asserts that as of December 1, 2015, Defendants owed $24,388.77 on an open account that Defendants had when they were Best Western members, which represents certain fees and other charges imposed on Defendants as Best Western members. (Doc. 1 at ¶¶ 42, 48, 58, 63-64; Doc. 1-2 at 5-14; Doc. 16, Ex. 1 at ¶ 21.) Pursuant to the Membership Agreement, interest has accrued and continues to

accrue on the unpaid amounts at the rate of one and one-half percent (1.5%) per month. (Doc. 1 at ¶¶ 25, 42, 47, 59; Doc. 1-1, p.1 at ¶ 12; Doc. 16, Ex. 1 at ¶ 21.)  Defendants further argue that pursuant to paragraph 36 of the Membership Agreement, Arizona Revised Statute §§ 12-341 and 12-341.01, and 15 U.S.C. § 1117, Best Western is entitled to recover its attorneys' fees and costs incurred in pursuing this action. (Doc. 1 at ¶¶ 49, 55, 56, 60, 78; Doc. 1-1, p. 9 at ¶ 36.)

**II.    Standards for the Entry of Default Judgment**

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk must enter the party's default."  After a default has been entered and the defendant fails to appear or move to set aside the default, the court may, on the plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2).  Here, the Clerk of Court has entered Defendants' default.  Thus, the Court may consider Best Western's request for default judgment.

Once default is entered, the well-pleaded factual allegations in the complaint are taken as true, except for those relating to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).  However, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.1978)); *see also DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (for default judgment purposes, a defendant is not held to admit facts that are not well-pled or conclusions of law).  The court must consider whether the alleged facts state a claim for relief. 10A Wright, Miller & Kane, *Federal Practice and Procedure*: Civil 3d § 2688, at 63 (1998) (the court must "consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law").

Granting default judgment is within the court's discretion. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir. 1980) (considering lack of merit in plaintiff's

- 5 -

substantive claims, the court did not abuse its discretion in declining to enter a default judgment). When deciding whether to grant default judgment, the court considers the following factors, referred to as the *Eitel* factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

As set forth below, the Court has applied the *Eitel* factors to Best Western's motion for default judgment and recommends that default judgment be entered against Defendants.

### A. The First, Fourth, Fifth, Sixth, and Seventh *Eitel* Factors

As discussed below, the first, sixth, and seventh *Eitel* factors weigh in favor of default judgment in this case. The fourth and fifth factors are neutral.

The first *Eitel* factor considers whether Best Western will suffer prejudice if default judgment is not entered. *Pepsico, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Defendants have failed to appear or otherwise defend this action. In the absence of a default judgment Best Western "would be without other recourse for recovery" to which it is entitled. *See Philip Morris USA, Inc. v. Castworld Prods, Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).

The sixth *Eitel* factor considers whether the default was due to excusable neglect. There is no evidence that Defendants' failure to appear or otherwise defend was the result of excusable neglect. Rather, the record reflects that Defendants failed to appear after being served with the Complaint. Thus, the sixth *Eitel* factor weighs in favor of default judgment.

/ / /

/ / /

/ / /

Under the seventh *Eitel* factor, the court considers the policy that, whenever possible, cases should be tried on the merits. *Eitel*, 782 F.2d at 1472. The existence of Rule 55(b), however, indicates that the preference for resolving cases on the merits is not absolute. *PepsiCo, Inc*., 238 F. Supp. 2d. at 1177. Because Defendants have not appeared or responded in this action, deciding this case on the merits is "impractical," if not impossible. *Id.* Thus, the seventh *Eitel* factor weighs in favor of default judgment.

The fourth and fifth *Eitel* factors are neutral in this case. The fourth *Eitel* factor balances the amount of money at stake in relation to the seriousness of the defendant's conduct. *Eitel*, 782 F.2d at 1471-72. Best Western seeks monetary damages in excess of $400,000. (Doc. 16-2 at 1-4.) Although this is a significant amount of money, the amount at stake is not necessarily excessive and is based on the agreements between Best Western and Defendants. Thus, the fourth factor is neutral.

The fifth *Eitel* factor considers the possibility that material facts may be in dispute. *Eitel*, 782 F.2d at 1471-72. Because Defendants have failed to respond in this action, and thus have not asserted that there are material facts in dispute, the Court cannot adequately weigh this factor. Thus, this factor is neutral.

### B. The Second and Third *Eitel* Factors

The second and third *Eitel* factors consider the merits of the plaintiff's claims and the sufficiency of the complaint. As set forth below, Best Western has sufficiently pleaded its clams.

#### 1. Count One ─ Breach of Contract

In Count One of the Complaint, Best Western alleges that Defendants breached their contract with Best Western by failing to pay amounts due and owing under the Membership Agreement. (Doc. 1 at ¶ 47.) In the Membership Agreement, Best Western and Defendants agreed their contract would be governed by Arizona law and that Phoenix, Arizona is the most convenient locale for actions between them. (Doc. 1-1, p. 7 at ¶¶ 37, 38.) Thus, the law of Arizona "controls both the construction of the contract and the question of breach." *In re James E. O'Connell Co., Inc*., 799 F.2d 1258, 1260

(9th Cir. 1986).  To prevail on a breach of contract claim under Arizona law, "a plaintiff must show a contract, a breach of contract, and damages."  *Konrath v. Amphitheater Unified School Dist. No. 10*, 2007 WL 2809026, at *26 (D. Ariz. Sept. 26, 2007) (citing *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975)).  As discussed below, Best Western's Complaint includes facts supporting each of these elements.  Based on Defendants' default, there is no dispute as to these facts.

On January 15, 2008, Defendants executed a Membership Agreement with Best Western pursuant to which they agreed to comply with Best Western's membership requirements including the Membership Agreement and the Regulatory Documents. (Doc. 1 at ¶¶ 3-4, 9, 22-23; Doc. 1-1 at 3-25; Doc. 16, Ex. 1 at ¶¶ 3-5.)  Through the Membership Agreement, Defendants agreed timely to pay all fees, dues, charges, and assessments imposed generally on the membership by the board of Best Western, and to promptly pay the costs of all goods or services provided by or ordered through Best Western.  (Doc. 1 at ¶ 25; Doc. 16, Ex. 1 at ¶ 6.)  Defendants further agreed that past due amounts would bear interest at the rate of one and one-half percent (1.5%) per month from the date due until paid.  (Doc. 1 at ¶ 25; Doc. 16, Ex. 1 at ¶ 7.)

Defendants' membership terminated effective November 6, 2014 because the Hotel failed to comply with the requirements of the Regulatory Documents.  (Doc. 1 at ¶¶ 31-32; Doc. 1-1 at 31-33; Doc. 16, Ex. 1 at ¶ 14.)  In a letter notifying Defendants of the termination, Best Western informed Defendants that they needed to make arrangements to pay the balance owed on the Hotel's open account and stop using the Best Western Symbols on or before November 21, 2014.  (Doc. 1 at ¶¶ 33; Doc. 1-1 at 31-33; Doc. 16, Ex. 1 at ¶ 15.)   On February 9, 2015, Best Western again notified Defendants that they needed to satisfy their open account.  (Doc. 1 at ¶ 35; Doc. 1-2 at 2; Doc. 16, Ex. 1 at ¶ 17.)  By failing to satisfy the amount owing on the open account, Defendants breached the Membership Agreement with Best Western.  (Doc. 1 at ¶¶ 38, 40, 43; Doc. 16, Ex. 1 at ¶¶ 21-22.)  Defendants breached the Membership Agreement by refusing to pay the amounts due and owing, resulting in a total amount of $22,663.05 due

to Best Western as of July 1, 2015, on which interest has continued to accrue with a resulting balance owed as of December 1, 2015 of $24,388.77. (Doc. 1 at ¶¶ 42, 47-48; Doc. 1-2 at 5-14; Doc. 16, Ex. 1 at ¶ 21.) Defendants also breached the Membership Agreement by failing to remove the curvilinear sign cabinets. (Doc. 1 at ¶ 34; Doc. 16, Ex. 1 at ¶¶ 16.)

Best Western has sufficiently alleged the existence of a contract, that Defendants breached that contract, and that it is owed damages. *See Konrath*, 2007 WL 2809026, at *26; *Graham*, 540 P.2d at 657 ("It is axiomatic that when one person agrees to perform in a certain manner upon adequate consideration and fails to keep the agreement, he is liable to the performing party for any damages sustained as a result of his failure to perform."). Accordingly, the second and third *Eitel* factors favor entry of default judgment against Defendants on Best Western's breach of contract claim alleged in Count One.

### 2. Count Three ─ Open Account Claim

Count Three of the Complaint alleges that Defendants failed to pay amounts due on their open account. (Doc. 1 at 15.) Under Arizona law, to prove a claim of open account, the plaintiff must prove the correctness of each charge on the open account. *See Piper v. Salem*, 61 P.2d 399, 401 (Ariz. 1936); *Merrick v. U.S. Rubber Co.*, 440 P.2d 314, 317 (Ariz. Ct. App. 1968). Best Western's Complaint includes facts supporting an open account claim. Based on Defendants' default, there is no dispute as to these facts.

As part of the Membership Agreement, Best Western rendered services and provided supplies on an open account, Defendants agreed to pay for such services and supplies on an open account, and Defendants agreed to pay for such services and supplies when due. (Doc. 1 at ¶¶ 25, 57; Doc. 16, Ex. 1 at ¶ 23.)

Defendants failed to pay for the services and supplies that Best Western provided, resulting in a due and owing amount of $22,663.05 as of July 1, 2015. (Doc. 1 at ¶ 58; Doc. 1-1 at 5-14; Doc. 16, Ex. 1 at ¶¶ 21-22). Because interest has continued to accrue, that amount increased to $24,388.77 as of December 1, 2015. (Doc. 16, Ex. 1 at ¶ 21.) Interest continues to accrue on this amount at the rate of one and one-half percent (1.5%)

per month until paid in full. (Doc. 1 at ¶ 47; Doc. 16, Ex. 1 at ¶ 7.) Because of their default, Defendants have not contested the outstanding charges. The Complaint sufficiently pleads an open account claim. (Doc. 1 at 15.) Accordingly, the second and third *Eitel* factors favor entry of default judgment against Defendants on Best Western's open account claim alleged in Count Three.

### 3. Count Four – Stated Account Claim

Count Four of the Complaint alleges that Defendants did not object to any items in the stated account that they held with Best Western and therefore owe the amounts due on that account. (Doc. 1 at ¶¶ 58, 62.) To prevail on a claim of stated account, Best Western must show that it rendered an account, and Defendants, upon examining it, made no objection. *See Trimble Cattle Co. v. Henry & Horne*, 592 P.2d 1311, 1314 (Ariz. Ct. App. 1979). These showings may be implied from the circumstances. *Id.* The Complaint alleges that Best Western issued invoices to Defendants. (Doc. 1 at ¶ 64.) Defendants defaulted and have not objected to items listed in the invoices. (Doc. 1 at ¶¶ 58, 62, 63, 64; Doc. 1-2 at 5-14; Doc. 16, Ex. 1 at ¶¶ 21-22.) Best Western has sufficiently pleaded its stated account claim. Accordingly, the second and third *Eitel* factors favor entry of default judgment against Defendants on Best Western's stated account claim alleged in Count Four.

### 4. Count Six — Breach of Contract

Count Six of the Complaint alleges a breach of contract claim based on Defendants' continued use of the Best Western Symbols after termination of the Membership Agreement. (Doc. 1 at ¶¶ 17-18.) To prevail on a breach of contract claim, Best Western must show "a contract, a breach of contract, and damages." *Konrath*, 2007 WL 2809026, at * 26 (citing *Graham*, 540 P.2d at 657).

Best Western alleges that pursuant to the terms of the Membership Agreement, Defendants were obligated to remove and stop using all Best Western Symbols in connection with the Hotel and in advertisements for the Hotel, within fifteen days after termination and to stop making any representation, either direct or indirect, that the Hotel

1 property was affiliated with Best Western. (Doc. 1 at ¶¶ 72-73.) Paragraph 24 of the Membership Agreement entitles Best Western to liquidated damages when a former member continues to use the Best Western Symbols for more than fifteen days after termination of the License. (Doc. 1 at ¶ 21, 27; Doc. 1-1, p. 7 at ¶ 24; Doc. 16, Ex. 1 at ¶ 19.) Pursuant to the Membership Agreement, the amount of liquidated damages is equal to fifteen percent of the mean of the Hotel's room rates per day, multiplied by the total number of rooms, for every day that a former member continues to use the Best Western Symbols beyond the fifteen-day period. (Doc. 1 at ¶ 26, 27-29; Doc. 1-1, p. 7 at ¶ 24; Doc. 16, Ex. 1 ¶ 19.)

The Complaint alleges that despite receiving notification that their Best Western membership had terminated, Defendants continued to display Best Western logos and trademarks in connection with the Hotel. (Doc. 1 at ¶¶ 31, 34, 74, 75.) Best Western has sufficiently alleged the existence of a contract, that Defendants breached that contract, and that it is owed damages. *See Konrath*, 2007 WL 2809026, at * 26. Accordingly, the second and third *Eitel* factors favor entry of default judgment against Defendants on Best Western's breach of contract claim alleged in Count Six.

### 5. Counts Two and Five

Counts Two and Five allege a breach of the implied covenant of good faith and fair dealing and unjust enrichment, respectively. (Doc. 1 at 14-15, 17.) Best Western's motion for default judgment does not specifically address these claims. (Doc. 16.) Therefore, the Court does not recommend the entry of default judgment on Counts Two and Five. However, because Best Western seeks the same relief on Counts One through Five (Doc. 1 at 25), judgment on one of those counts is sufficient to award Best Western the relief it seeks.

### 6. Counts Seven through Twelve

Counts Seven through Twelve of the Complaint allege that Defendants committed federal, state, and common law trademark infringement and unfair competition by failing to cease and desist from using Best Western's Symbols in connection with the Hotel after

1   termination of the Hotel's Best Western License.  (Doc. 1 at 19-25.)  Best Western seeks
2   the same relief on all of these claims.  (*Id.* at 26.)  In its motion for default judgment, Best
3   Western only specifically addresses its Lanham Act claim alleged in Count Seven.
4   (Doc. 16 at 10-11.)   In a footnote, Best Western states that all of its "infringement
5   claims" are subject to the same likelihood of confusion test.  (Doc. 16 at 11 n.1.)
6   However, Best Western does not specifically address the elements of the claims alleged
7   in Counts Eight through Twelve and does not discuss the factual allegations that establish
8   those specific claims.  (*Id.*)  Best Western also fails to address whether its state law
9   infringement claims are preempted by federal law.  (*Id.*)  Considering Best Western's
10  cursory discussion of Counts Eight through Twelve, the Court declines to recommend
11  that default judgment be granted on those claims.  However, because Best Western seeks
12  the same relief on Counts Seven through Twelve, judgment on one of those counts is
13  sufficient to award Best Western the relief it seeks.  Therefore, the Court only considers
14  that Lanham Act claim that Best Western alleges in Count Seven and specifically
15  discusses in its motion for default judgment.

16        To establish a trademark infringement claim under Section 32(1) of the Lanham
17  Act, 15 U.S.C. § 1114(1), a registrant must establish that it holds a protectable mark and
18  that the infringer's imitating mark is similar enough to cause confusion, mistake, or
19  deception.  *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 630 (9th Cir.
20  2005).  The test for "likelihood of confusion" requires the court to determine whether a
21  "reasonably prudent consumer in the marketplace is likely to be confused as to the origin
22  of the good or service bearing one of the marks."  *Id*.  The facts before the Court indicate
23  that the likelihood of confusion in this case is "very high" because Defendants displayed
24  a trademark identical to Best Western's protected marks.  *See Best Western Int'l, Inc. v.*
25  *Patel*, 523 F. Supp. 2d 979, 990 (D. Ariz. 2007).  A prevailing plaintiff under the Lanham
26  Act is entitled to injunctive relief, damages, defendant's profits, and costs.  *See* 15 U.S.C.
27  § 1116; 15 U.S.C. § 1117.

28

Best Western's Complaint alleges that Best Western has federally registered trademarks. (Doc. 1 at ¶¶ 11-14; Doc. 16, Ex. 1 at ¶ 9.) Defendants continued to use the Best Western Symbols in connection with the Hotel after the termination of the License to use those Symbols, which likely caused confusion to the traveling public and injury to Best Western and its members. (Doc. 1 at ¶ 33, 34, 37; Doc. 16, Ex. 1 at ¶16, 18); *see Best Western*, 523 F. Supp. 2d at 990 (concluding that the defendant's continued use of Best Western's marks at her hotel after termination of her Best Western membership created a very high likelihood of confusion). Best Western sufficiently pleaded a trademark infringement claim. Accordingly, the second and third *Eitel* factors favor entry of default judgment against Defendants on Best Western's trademark infringement claim alleged in Count Seven.

### III. Standards for an Award of Damages in a Default Judgment

Having determined that Best Western has sufficiently alleged Counts One, Three, Four, Six, and Seven of the Complaint, the Court next determines the "amount and character" of relief to award. *See James v. Frame*, 6 F.3d 307, 310 (9th Cir. 1993) (district court has "wide latitude" and discretion in determining the amount of damages to award upon default judgment). Entry of a default judgment for monetary damages is appropriate without a hearing if "the amount claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir.1981) (no hearing necessary when documents show that the judgment amount is based upon a definite figure).

Unliquidated and punitive damages, however, require "proving up" at an evidentiary hearing or through other means. *See Black & Decker, Inc. v. All Spares, Inc.*, 2010 WL 3034887, at *3 (D. Ariz. Aug. 3, 2010). "[P]laintiff's burden in 'proving up' damages on a motion for default judgment is relatively lenient. If proximate cause is properly alleged in the complaint, it is admitted upon default. Injury is established and plaintiff need only prove that the compensation sought relates to the damages that naturally flow from the injuries pled." *Id.* (citing *Philip Morris USA, Inc. v. Castworld*

*Prods, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003)).  "In determining damages, the court can rely on the declarations submitted by the plaintiff."  *Philip Morris*, 219 F.R.D. at 498. The plaintiff must provide evidence of its damages, and the damages "must not differ in kind, form, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c); *see also Freemyer v. Kyrene Village II, LLC*, 2011 WL 42681, at *3 (D. Ariz. Jan. 6, 2011)).

**IV.   Remedies**

Because the Court has found that default judgment should be entered in favor of Best Western and against Defendants, the Court considers Best Western's claimed monetary damages and its request for injunctive relief.

**A.   Monetary Damages**

Defendants failed to pay Best Western amounts due and owing as required by the Membership Agreement.  As of July 1, 2015, there remained due and owing by Defendants to Best Western, the sum of $22,663.05 for certain fees and other charges imposed on Defendants as a Best Western member, including services and supplies that Best Western provided on an open account.  (Doc. 1 at ¶¶ 47, 58, 59; Doc. 1-2 at 5- 14; Doc. 16, Ex. 1 at ¶ 21.)  Pursuant to the Membership Agreement, interest has continued to accrue resulting in an amount due and owing of $24,388.77 as of December 1, 2015, and interest continues to accrue at the rate of one and one-half percent per month until paid in full.  (Doc. 1 at ¶ 25; Doc. 1-1, p. 5 at ¶ 12; Doc. 16, Ex.1 at ¶¶ 7, 21.)

Defendants are also liable to Best Western for liquidated damages pursuant to the Membership Agreement in the amount of $387,601.37.  (Doc. 1-1, p. 7 at ¶ 24; Doc. 16, Ex. 1 at ¶¶ 24, 25.)  Another court in this district has found that Best Western's Membership Agreement's liquidated damages formula was reasonable when a former member refused to discontinue use of Best Western's Symbols, and this Court agrees with the conclusion.  *See Best Western Int'l, Inc. v. Oasis Invs., L.P.*, 398 F. Supp. 2d 1075, 1081 (D. Ariz. 2005) ("[T]he Court concludes that it would be very difficult for Best Western to accurately estimate the loss suffered due to Oasis' unauthorized use of its

- 14 -

1 trademarks.  The Court, therefore, gives great weight to the liquidated damages formula 2 given in the contract.").  This formula requires taking the average of all room rates, which 3 for the property in this case equals $79.16, and multiplying that number by the total 4 number of rooms, which is eighty-one.  (Doc. 16, Ex. 1 at ¶ 24.)  This number is then 5 multiplied by 15%, resulting in a total of $961.79 per day for each day there exists a 6 violation.  (Doc. 1 at ¶¶ 76, 77; Doc.16, Ex. 1 at ¶ 24.)   Best Western has offered 7 evidence that Defendants continued to infringe upon Best Western's trademarks for at 8 least 403 days.  (Doc. 16, Ex. 1 at ¶ 25.)

### B. Injunctive Relief

Best Western also seeks injunctive relief.  The Court finds injunctive relief appropriate to address Defendants' continued, unauthorized use of the Best Western Symbols.  *See* 15 U.S.C. § 1116.

### C. Attorneys' Fees and Costs

Best Western seeks attorney's fees and costs pursuant to the Membership Agreement.  (Doc. 16 at 13-14.)  Paragraph 36 of the Membership Agreement provides that if a party to that agreement breaches any obligation to Best Western, it "is liable to Best Western for all attorney's fees, costs and expenses incurred by Best Western in connection with the breach or violation whether or not suit is filed."  (Doc 1-1, p. 9 at ¶ 36.)  As previously stated, the Membership Agreement is governed by Arizona law.  (Doc. 1-1, p. 9 at ¶ 37.)  Under Arizona law, when a prevailing party's contract calls for payment of "all" attorney's fees and costs, the court must award all fees and costs as long as the fees are facially reasonable.  *See McDowell Mountain Ranch Comty. Ass'n*, *Inc. v. Simons*, 165 P.3d 667, 672 (Ariz. Ct. App. 2007).  Accordingly, the Court recommends an award of attorney's fees and costs to Best Western.

To support is request for attorney's fees and costs, Best Western submitted the affidavit of Michelle Swan.  (Doc. 17.)  Best Western requests an award of attorneys' fees in the amount of $4,251.50 and costs in the amount of $1,268.30.  (*Id.* at 4.)  Best Western has provided sufficient documentation of the requested attorneys' fees and costs

(Doc. 17, Ex. A), and the Court finds them reasonable. Accordingly, the Court recommends that Best Western be awarded its requested fees and costs that are itemized in the exhibits to Michelle Swann's affidavit. (Doc. 17, Ex. A.)

Accordingly,

**IT IS RECOMMENDED** that Plaintiff's Motion for Default Judgment (Doc. 16) be **GRANTED** against Defendants KKR, LLC and Ashish Gupta on Counts One, Three, Four, Six and Seven, as set forth below, and be **DENIED** on Counts Two, Five, and Counts Eight through Twelve.

**IT IS FURTHER RECOMMENDED** that on Counts One, Three, and Four of the Complaint, the Court enter judgment against Defendants, and against each Defendant, in the amount of $24,388.77, plus interest at the rate of 1.5% per month from December 1, 2015 through the date the judgment is entered.

**IT IS FURTHER RECOMMENDED** that on Count Six of the Complaint, the Court enter judgment against Defendants, and against each Defendant, in the amount of $387,601.37.

**IT IS FURTHER RECOMMENDED** that Best Western be awarded attorney's fees, costs, and expenses to be paid by Defendants, and by each Defendant, in the amount of $5,519.80 ($4,251.50 in attorneys' fees and $1,268.30 in costs).

**IT IS FURTHER RECOMMENDED** that Best Western be granted a permanent injunction directing Defendants and their respective officers, members, agents, servants, and employees, and any other persons and entities acting on behalf of or in concert with Defendants, (i) to immediately and permanently remove all Best Western Symbols as used on the premises of, or in reference to, the Hotel, including (without limitation) signage, the curvilinear signage cabinets or any other display or items bearing any of the Best Western Symbols and (ii) to reimburse costs incurred by Best Western to cause the removal of the same should Defendants fail to do so within ten (10) days of the date on which the order granting the injunction is filed.

1      **IT IS FURTHER RECOMMENDED** that Best Western be granted a permanent injunction directing Defendants and any other persons and entities acting on behalf of or in concert with Defendants, (i) to immediately notify all advertisers, search engines, and providers of related services that Defendants are not affiliated with Best Western and are required to cause the cessation of all advertising and distribution of promotional material containing any of the Best Western Symbols, any colorable imitation thereof, or any other confusingly similar marks, and (ii) enjoining Defendants and any other persons and entities acting on behalf of or in concert with Defendants or advertising Defendants' hotel property from using any such marks (or any imitations or marks confusingly similar thereto) anywhere on the Internet or elsewhere, including without limitation any use on or with any websites, domain names, metatags, key words, banner ads, or search engines.

**IT IS FURTHER RECOMMENDED** that interest accrue on all amounts awarded by the Court pursuant to 28 U.S.C. § 1961.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6 and 72. The parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the District Court's acceptance of the Report and Recommendation without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

/ / /

/ / /

/ / /

/ / /

/ / /

- 17 -

1  Failure to file timely objections to any factual determinations of the Magistrate Judge
2  may be considered a waiver of a party's right to appellate review of the findings of fact in
3  an order or judgment entered pursuant to the Magistrate Judge's recommendation.  *See*
4  Fed. R. Civ. P. 72.

Dated this 16th day of February, 2016.

*/s/ Bridget S. Bade*
Bridget S. Bade
United States Magistrate Judge